[Civ. No. 21359. Second Dist., Div. Three. Oct. 23, 1956.]

TRUMAN C. DRIVER et al., Respondents, v. A. A.
ACQUISTO, Appellant.

John R. Danch and Wallace Hatcher for Appellant.

William Leeker for Respondents.

WOOD (Parker), J.—Plaintiffs sought damages for conversion of an automobile. Defendant filed an answer, denying the alleged conversion; and he filed a cross-complaint, seeking $55.75 allegedly due as a deficiency, under a conditional sale contract, after the automobile had been repossessed and resold by defendant. Judgment was for plaintiffs for $1,093, and that cross-complainant take nothing. Defendant appeals from the judgment. (The action was commenced in the Municipal Court at Santa Barbara, and upon a motion for change of venue was transferred to the Superior Court of Ventura County.)

Appellant contends that the evidence was insufficient to support the judgment.

About September 10, 1953, defendant Acquisto and plaintiffs entered into a written conditional contract of sale whereby defendant sold to plaintiffs a 1950 Mercury automobile. The contract stated, in part, that the cash price was $1,425.13; the down payment was $475.13 which was an equity in a Pontiac and trailer; the unpaid balance of the cash price was $950; the time-price differential was $237.28; the contract balance was $1,187.28, which was to be paid in 24 monthly instalments of $49.47 beginning October 11, 1953. The contract was signed as follows: Anthony Motors, by A. A. Acquisto, owner. Truman C. Driver. Mrs. Tena B. Driver. J. W. Glover, Co-maker.

Prior to the making of the contract, the Mercury automobile was owned by J. W. Glover who had an equity of approximately $400 in it, and he owed the Bank of America $900 on the automobile. Glover and plaintiff Mr. Driver entered into an arrangement whereby it was contemplated that plaintiffs would buy the automobile by paying Glover the amount of his equity and by financing the balance on an instalment plan through Acquisto. Glover conferred with Acquisto relative to the financing, and thereafter the conditional contract of sale, above referred to, was executed. No automobile or trailer

was transferred (as indicated by the contract) to Acquisto by plaintiffs as a down payment or at all. Plaintiffs paid Glover, for his equity, $379 cash and transferred a Ford automobile to him for the agreed amount of $75, making the total payment of $454 to Glover. Acquisto paid to the Bank of America the $900 indebtedness of Glover.

On September 21, 1953, Acquisto sold and assigned the contract to Citizens Bank of Santa Paula. The bank notified plaintiffs by letter that the contract had been assigned to it, and that in making the payments to the bank the plaintiffs should use a payment book which was enclosed in the letter. Mr. Driver's salary was paid to him on the 15th of each month and he requested the bank to change the due date of the automobile payments from the 11th to the 15th of each month. The bank changed the due date to the 15th. Plaintiffs made payments to the bank as follows: October 19, 1953, $49.47; November 17, 1953, $49.47; December 31, 1953, $98.94. In other words, the payments due prior to February, 1954 were paid.

The conditional contract of sale provided that Acquisto may insure the automobile and that the plaintiffs would pay the premium. Also, the plaintiffs agreed in writing that within 10 days after September 10, 1953, they would furnish an insurance policy covering the automobile. They furnished such a policy but it was canceled on December 18, 1953, because plaintiffs did not pay the balance due on the premium.

About February 10, 1954, Acquisto told plaintiff Mr. Driver that Acquisto would get another insurance policy on the automobile if Driver would pay the premium on February 15. Driver testified that he told Acquisto that he would pay the premium and also pay the February payment of $49.47 on February 15, 1954, between 6:30 p. m. and 8:30 p. m. at Acquisto's office. Another policy was issued on February 11 and the premium was $53. Driver testified that he and his wife went to Acquisto's office on February 15 at 7:15 p. m. to pay said amounts, but Acquisto was not at his office; they returned to his office about 7:45 p. m. and about 10:30 p. m. but Acquisto was not there.

On the following morning, February 16, Acquisto telephoned Driver at his place of employment and asked him why he had not paid the money on February 15. Driver testified that he replied that he had been to the office (at the times above stated) and that Acquisto was not there; that Acquisto then said that perhaps he had stepped out for a sandwich and

coffee; that Acquisto also said that he had been to the home of the Drivers on the night of February 15; that he told Acquisto that Mrs. Driver would be at Acquisto's office that afternoon (February 16) to make the payment; that Acquisto "got rather nasty" and said that if Driver did not pay the money by 10:30 a. m. of that day (February 16) he would take the car; then Mr. Driver was "rather mad" and he said, "Well, if you think you have the right to take my car, you go ahead and take it then." At that time the automobile was at the home of plaintiffs—Mrs. Driver had used it in taking Mr. Driver to his place of employment and she returned it to their home.

On February 16, about 1:30 p. m., Acquisto went to plaintiffs' home and took the automobile and drove it to his office. Acquisto testified that when he arrived at plaintiffs' home he told Mrs. Driver that he could store the car if they would take care of the insurance; that she replied that they could not pay; he asked her for the keys and she handed them to him; he asked for the registration certificate (white slip) and she gave it to him.

On February 16, after taking the automobile, Acquisto sent a letter to plaintiffs wherein he demanded payment of the balance of $1,010.73 not later than February 22. The bank had not made any demand upon plaintiffs for the February payment, and the bank did not instruct Acquisto to repossess the automobile.

On January 17, 1952 (prior to the transaction herein between Acquisto and the Citizens Bank of Santa Paula), Acquisto and the bank had entered into a "Dealers Repurchase Agreement" which provided that the bank would purchase conditional sales contracts from Acquisto and that a sale of such a contract by Acquisto to the bank would be without recourse except as to any contract which may become 60 days delinquent, and as to such a contract Acquisto would repurchase it from the bank on demand.

On February 26, 1954 (after taking the automobile), Acquisto paid $868.40 to the bank, and the contract was transferred to him. On April 30, 1954, Acquisto sold the automobile to Mr. Hamelin for $1,095.

Plaintiff Mr. Driver testified that he did not consent to the taking of the automobile by Acquisto. Mrs. Driver was in Oklahoma at the time of the trial.

The court found that on February 16, 1954, plaintiffs were the owners and entitled to the possession of said automobile,

and on said date defendant took the automobile and converted it to his own use; on said date the value of the automobile was $1,093, and defendant had no interest in the automobile or in said conditional contract of sale; on said date the Citizens Bank of Santa Paula was the owner and holder of said contract, and plaintiffs were not in default in the performance of any of the provisions of the contract; the defendant, in taking the automobile on said date, was not the agent, representative or employee of said bank and had not been authorized by the bank to take possession of the automobile on behalf of the bank at any time; on said February 16 there was insurance on the automobile as required by said contract and by a certain other agreement to furnish an insurance policy, and that said insurance was in effect on said date; the payment due by plaintiffs under the contract of sale for the month of February 1954, and the payment due on the insurance premium were due on February 15, 1954; on said February 15 plaintiffs were ready to pay all payments due under the contract of sale and the agreement to furnish insurance, and they presented themselves at defendant's place of business for the purpose of making the payments but the place was closed and no one was there to receive the payments; plaintiffs did not, nor did either of them, consent to the taking of the automobile by defendant on said February 16 or at any time; about April 30, 1954, defendant resold the automobile for $1,095, and said resale was made without notice to either plaintiff and without the knowledge or consent of either of them; the value of the interest of plaintiffs in the automobile on said February 16 was $1,093.

Appellant argues that there was no conversion because plaintiffs consented to the taking of the automobile. As above stated, the court found that the plaintiffs did not consent. Appellant, in presenting the argument that plaintiffs consented to the taking, quotes his own testimony which was, in substance, that Mr. Driver got mad and told him to pick up the car, that he (Driver) did not have a driver's license and could not drive; and that, when he (Acquisto) arrived at plaintiffs' home, Mrs. Driver said that she knew what he wanted, that her husband had told her, and that they could not pay for the insurance; and that when he asked Mrs. Driver for the keys and the white slip she handed them to him. Of course, the trial judge was not required to accept the testimony of Acquisto as to what was said and done when he took the automobile from plaintiffs. Apparently the judge

accepted Driver's testimony which was to the effect that he had gone to Acquisto's office on the night of February 15 for the purpose of paying Acquisto; that on the morning of February 16, in response to Acquisto's telephone call, he told Acquisto that he had tried to pay him the night before and that Mrs. Driver would be at Acquisto's office in the afternoon of that day to make the payment; and that when Acquisto got nasty and made him mad he (Driver) said, ''Well, if you think you have the right to take my car, you go ahead and take it then.'' In view of the circumstances under which that quoted statement of Driver was made it cannot be said, as a matter of law, that the statement amounted to consent that the car be taken. Under the circumstances, particularly the circumstances as to provocation and anger, the statement might be regarded as a warning or threat on the part of Driver that if Acquisto did take the car his right to take it would be challenged and he would be held accountable for taking it. Whether the plaintiffs consented to the taking was a question of fact for the trial judge. The finding that they did not consent is supported by the evidence.

 Appellant also argues that he had a sufficient interest in the automobile and contract of sale to entitle him to repossess the automobile. The appellant had assigned the contract to the bank without recourse. Although he had a written agreement with the bank whereby, under certain circumstances, he would repurchase the contract on demand, no such demand had been made upon him and he had not repurchased the contract at the time he repossessed the automobile. Although there was evidence that he had an oral arrangement with the bank whereby he ''works'' his delinquent accounts, there was also evidence that the bank had extended the due date of the monthly payments to the 15th day of each month; that the bank's policy was to send a demand or delinquent notice on the 5th day of delinquency; that the bank had not demanded payment by plaintiff on February 16; and the bank had not instructed appellant to repossess the automobile. The findings that appellant had no interest in the automobile or contract of sale when he took the automobile and that he converted the automobile to his own use are supported by the evidence.

Appellant contends further that, even if plaintiffs were entitled to judgment by reason of conversion, they were not entitled to recover more than the value of their limited interest in the automobile, that is, the value of the automobile less the

unpaid purchase price. The court found that the value of the automobile was $1,093. It is to be noted that the court also found that the value of the interest of the plaintiffs in said automobile was $1,093. Since plaintiffs were awarded $1,093, it appears that they were awarded (as their interest in the automobile) the full value of the automobile. It appears that the balance due to the bank under the contract of sale, at the time of the conversion, was approximately $868.40. (Acquisto testified that on February 26—ten days after he took the automobile—he purchased the contract from the bank for $868.40.) Appellant alleged in his cross-complaint that on February 26, 1953 (1954), he paid $868.40, the unpaid balance due to the bank on the contract, and that the bank transferred the ownership of the automobile to him. Plaintiffs, in answering the cross-complaint, denied that allegation (basing their denial upon lack of information). The court did not make a finding upon that issue. A finding should have been made thereon. If it is a fact that appellant was the owner of the contract at the time of the trial, the court in fixing the amount of damages for the conversion should not have included therein the unpaid amount of the purchase price. (Plaintiffs state in their brief that they concede that appellant, after retaking the vehicle, paid the bank $868.40 and received from the bank a transfer of the contract.) It is true that under some circumstances a purchaser under a conditional sale contract (who has not paid the full contract price) may recover the full value of the property converted. An example of such circumstances is where the converter is a stranger and has no interest in the property and the purchaser is under an obligation to pay the balance of the contract price to the owner of the contract. In *Goldberg* v. *List*, 11 Cal.2d 389 [79 P.2d 1087, 116 A.L.R. 900], it was said at page 393: ''[A]n analysis of the authorities which support the rule that a recovery of the full value of the property converted may be had by a person having only a limited or qualified interest therein, indicates that the underlying reason and basis for such recovery is the fact that the party having the limited or qualified interest is liable over to the owner of the remaining interest, and in order to be adequately compensated must receive sufficient compensation not only to compensate himself for his own loss but to satisfy the demands of such owner.'' It was also said in that case at page 393: ''That this is the true basis for the permitting of the recovery of the full value of the property converted by one owning a

qualified interest is demonstrated by the fact that when the action is against the owner of the general interest, the owner of a qualified interest can only recover for the value of such limited interest, in order 'to avoid circuity of action.' [Citations.]'' In the present case it appears that the appellant was the owner of the contract ''or general interest'' at the time of the trial, and that the plaintiffs were not obligated to pay the balance of the contract price to the bank but were obligated to pay it to the appellant. If appellant was the owner of the contract at the time of trial, plaintiffs were not entitled to recover the full value of the automobile, but they were entitled to recover the value of their limited interest in the automobile which is the difference between the value of the automobile and the amount of the unpaid purchase price at the time of the conversion. As above stated, the court erred in not finding upon the issue as to whether appellant had purchased the contract from the bank. ▆ Plaintiffs concede, however, as above stated, that appellant had purchased the contract from the bank for $868.40. They also state in their brief that the question, with respect to amount of recovery, is whether the plaintiffs are entitled to $1,093 (the full value), or to that amount less $868.40, or a net of $224.60. The amount of the judgment should have been $224.60.

▆ Plaintiffs assert that the conditional sale contract was in violation of section 2982 of the Civil Code and may not be enforced by appellant. That section provides that the ''time price differential'' in a conditional sale contract for the sale of a motor vehicle shall not exceed a certain percent of the unpaid balance, which percent is to be computed in a manner specified therein. The section also provides that if the seller, except as the result of accidental error, violates the provision as to time price differential the contract shall not be enforceable. This contention of plaintiffs relates to involved computations which, according to plaintiffs, show an overcharge by appellant of $9.50. The proposed findings, which were submitted to the judge, included a finding to the effect that defendant violated said section to the extent of such overcharge and that the overcharge was not the result of an accidental error. The judge deleted that proposed finding from the findings as made. Plaintiffs did not plead that there was a violation of said section. The computations as to the alleged error were not presented at the trial. Even if there had been such an error, this court cannot decide whether the

error was accidental. Appellant asserts in his brief that if plaintiffs had not avoided, in their pleadings and proof, the question of illegality of the contract, appellant could have shown at the trial how he arrived at his calculations. The trial judge did not err in not making a finding as to the alleged violation.

The judgment is modified by reducing the amount thereof to $224.60, and as so modified the judgment is affirmed. Each party to pay his own costs on appeal.

Shinn, P. J., and Vallée, J., concurred.