[Civ. No. 16868. First Dist., Div. One. Oct. 24, 1956.]

VERA M. SHARPE, Appellant, v. IRA BROTZMAN et al., Respondents.

Barbagelata, Zief & Carmazzi, Arthur C. Zief and Rinaldo A. Carmazzi for Appellant.

Rea, Frasse & Anastasi and Edwin H. Williams for Respondents.

PETERS, P. J.—Vera M. Sharpe appeals from a judgment adverse to her. The facts appear to be as follows: When the original complaint was filed on March 18, 1954, Vera M. Sharpe and her husband were coowners of the property here involved, but the complaint was filed in the name of the wife alone. Later the trustee in bankruptcy of the estate of the husband came into the action by way of a complaint in intervention. On the date of the filing of the original complaint in Mendocino County the court issued a temporary restraining order preventing defendants from selling the property and ordering them to show cause on March 26, 1954, why they should not be so enjoined pending suit. It also appears that defendants' motion for a change of venue to Santa Clara County was granted on April 5, 1954.

The record shows that the Brotzmans filed a cross-complaint, but no recovery was granted to them based on its allegations, and no appeal has been taken from such denial. During trial, by consent of the parties, defendants Sleveland and Cagle were dismissed as parties.

The case went to trial on the issues joined as to the first count of the second amended complaint, the other count of such pleading not being now involved. This first count alleged that plaintiff was the owner of an undivided one-half interest in a certain sawmill and its equipment; that on February 18, 1952, plaintiff and her husband and one Kirkwood (the latter having purchased the property with the two Sharpes, but later having conveyed his interest to the Sharpes) executed and delivered to the Brotzmans a promissory note for $34,369.42 secured by a deed of trust on the realty and a chattel mortgage on the personalty. It is then alleged that "on or about the 11th day of April, 1953, defendants Ira Brotzman and Antoine Brotzman wrongfully and without cause and without any authority or permission from plaintiff or said Milton Sharpe, took possession of all of the said real property and the said personal property hereinabove described, that on said 11th day of April, 1953, the said defendants Ira Brotzman and Antoine Brotzman had no legal title to either said real property or said personal property and plaintiff and the said Milton Sharpe at said time were each the owners of an undivided one-half interest in the said real and personal property; that thereafter defendants, Ira Brotzman and Antoine Brotzman without any authority or permission from plaintiff or Milton Sharpe placed defendants, James Cagle and Arnold Sleveland, in possession

of the said real and personal property." It is then alleged that defendants in this fashion thus deprived plaintiff of the use of her property, and that she is entitled either to its return or the reasonable value of her interest therein in the amount of $35,000.

To this complaint the defendants answered, denying its major allegations, and filed a cross-complaint. The defendants Cagle and Sleveland also answered, but they were later dismissed. On the issues thus formed the case proceeded to trial.

The facts developed at the trial were that the sawmill and its appurtenances were sold by the Brotzmans to the Sharpes and Kirkwood in October of 1951 for $40,000. Prior to February 18, 1952, the purchasers paid over $6,000 on the purchase price. On this last date the purchasers executed and delivered to the Brotzmans a promissory note for $34,369.42 for the balance of the purchase price, plus a few other uncontested charges. The note was secured by a deed of trust and chattel mortgage. The note provided for interest at 4 per cent payable monthly, and also required monthly accountings by the purchasers of the number of board feet cut at the mill, and required the purchasers to pay the Brotzmans $4.00 per 1,000 feet cut. The payments were to be applied first to interest, then to principal, with not less than $6,000 to be paid by September 1, 1952, with the entire balance due by August 13, 1954.

In July of 1952 the Brotzmans sent the purchasers a notice of default. This led to certain negotiations between the parties whereby Mr. Sharpe transferred his interest in a certain gasoline station to the Brotzmans for a $12,000 credit on the mill obligation. In exchange for this equity in the gasoline station the Brotzmans waived all payments except interest from August, 1952, through June of 1953, if the monthly cuttings did not exceed 400,000 board feet a month, but, if they did, the Brotzmans were to be paid $4.00 per thousand feet on the excess. For the months of July, August and September, 1953, the rate of payment was reduced to $2.50 per thousand feet. An addendum to the written agreement provided that "All payments for balance of 1952 on cutout is hereby waived."

This written agreement was signed by Brotzman and Sharpe on September 4, 1952, at which time Brotzman also gave Sharpe a bill of sale to a certain piece of sawmill equipment covered by the chattel mortgage.

The purchasers operated the sawmill until January 10, 1953, when they entered into a lease-purchase agreement with Davis and Sanderson, who operated the mill until April 10, 1953, when they were ousted from possession by the Brotzmans. During the period they were operating the mill Davis and Sanderson paid the Sharpes a $1,000 down payment and about $2,000 on the lumber cut by them.

After the gasoline station settlement was executed in September of 1952, Brotzman testified that he made no further demands on the Sharpes until January of 1953, at which time he demanded certain interest payments and certain taxes that he had paid. Sharpe then paid Brotzman $434.56 for interest and taxes. About April 8, 1953, when the Sharpes were again delinquent on certain payments, Brotzman visited the sawmill. He discovered that conditions were bad and he so notified the Sharpes. Among other things, there were attachments and tax liens levied against the property, insurance in a large amount was about to expire, and the equipment of the mill was in poor repair and working badly.

Under these circumstances, the Brotzmans foreclosed on the chattel mortgage and bid in the personal property for $3,500. About this same time the Brotzmans took over possession of the sawmill and on April 21, 1953, the Brotzmans put Cagle and Sleveland into possession. These tenants paid the Brotzmans $100 a month rent, and later bought the mill for $5,000.

The original complaint in the present action was filed March 18, 1954. On March 31, 1954, the Brotzmans had the trustee under the deed of trust sell the mill property, Brotzman buying it for $3,450. The Brotzmans are still in possession of the property and collecting the rent therefrom.

On this evidence the trial court found that on April 10, 1953, and thereafter, the Sharpes were in default; that the Brotzmans then foreclosed the chattel mortgage and bought in the personal property at the sale; that this terminated the Sharpes' interest in the personalty; that subsequently the trustee under the deed of trust conducted a valid sale of the realty, which was bought by the Brotzmans; that this terminated the Sharpes' interest in the realty. Based on these findings judgment was awarded defendants on the first cause of action of the second amended complaint. Mrs. Sharpe appeals.

It is somewhat difficult to ascertain appellant's precise theory on this appeal. She does challenge the sufficiency of

the evidence to support the finding that the real property was sold under the terms of the deed of trust or in accordance with law. It is urged that there is no evidence of the recording of the notice of default, of posting, of publishing, or notice of intention to sell, etc. Apparently, the trustee's deed was not introduced into evidence. This court, upon motion duly made, permitted the respondents to produce the deed as additional evidence. That deed, now part of the record, contains full and proper recitals that support the finding that the sale under the deed of trust was properly carried out.

Appellant also contends that the trustee's sale was in violation of the terms of the restraining order issued by the trial court. This presents the only really debatable issue on this appeal. The trial court, when the original complaint was filed in Mendocino County on March 18, 1954, issued its order to defendants to show cause on March 26, 1954, why a preliminary injunction should not be granted prohibiting any sale of the realty pending trial, and also issued an ex parte order restraining the sale of the property until that date. On March 26, 1954, the return date of the order to show cause, the Mendocino court made the following minute order: "The court does hereby make an order that the order to show cause why an injunction pendente lite should not be granted pursuant to the order to show cause issued out of this court on the 18th day of March, 1954, and filed herein on the 25th day of March, 1954, be and the same is hereby continued to April 2, 1954, at two P.M. No order is made respecting the temporary restraining order."

What effect, if any, did this order have on the restraining order? Did it amount to a dismissal of the restraining order, or did it continue it in effect? The answers to these questions are important because the trustee's sale of the realty occurred shortly after March 26, 1954. If the restraining order was still in effect, the validity of that sale would be open to serious question.

The record does not show who appeared in court on March 26th, or who requested the continuance. All we have is the order above quoted. While it is possible that the trial court intended by that order to continue the restraining order in effect, this is not the most reasonable interpretation of the order. Of course, under section 527 of the Code of Civil Procedure such a temporary restraining order is terminated automatically at the end of 10 days unless a subsequent

order is made continuing it in force. ■ Moreover, it is the law that the burden was on the appellant to prove that the restraining order was in effect at the time of the foreclosure sale. (*Agricultural Prorate Com.* v. *Superior Court,* 30 Cal. App.2d 154 [85 P.2d 898]; *Palm Springs etc. Co.* v. *Kieberk Corp.,* 37 Cal.App.2d 642 [100 P.2d 346].) ■ It is of some significance that the original order is in two parts, an order to show cause and a restraining order. On March 26, 1954, the trial court saw fit to continue the order to show cause in effect by the use of express language, and then used no such language in respect to the restraining order. It is also significant that, although the burden was on appellant to show that the restraining order was still in effect at the time of the sale, she made no mention at all of the point in the trial court. Under these circumstances, the proper interpretation of the quoted order is that it did not continue the restraining order in effect after the 26th. Therefore, it was dissolved by operation of law, and not in effect at the time of the trustee's sale.

Appellant also argues that the finding that the purchasers were in default on April 10, 1953, is not supported. Appellant contends that the record shows that at the time of the foreclosure of the chattel mortgage the purchasers were only in default in the amount of $434; that at the foreclosure sale Brotzman bid $3,500 which was credited to the purchasers' account so as to wipe out the default. The answer to these contentions is obvious. The purchasers were admittedly in default when the chattel mortgage was foreclosed. The promissory note, the chattel mortgage and the deed of trust all contained provisions that in the event of default the Brotzmans had the right to declare the full amount of the note immediately due. The record shows that attached to the formal notice of the foreclosure sale under the chattel mortgage was a statement which reads:

"Operators fighting—Joe's truck and car attached—their credit broke down to where the log supply was shut off—wage checks bouncing—mill attached for unemployment insurance department. Machinery going to hell—I took over—have control now and aim to keep same until the sale.

"*I herewith demand of you all the unpaid balance plus taxes plus the percentages allowed me under the mortgage as foreclosure costs.* I understand same may be paid any time before the sale.

"I am very sorry—this deal has been a torture mentally every [sic] since we went into it. I wouldn't be protected in taking it back—so had to foreclose."

The italicized portion was clearly an exercise of the option given under all the instruments to declare all payments due upon a default, and was notice to the purchasers of the exercise of that option. The trial court found that on the "10th day of April, 1953, and at all times subsequent thereto, the complainant Vera M. Sharpe and Milton Sharpe, her husband, were in default under the terms and provisions of said promissory note, deed of trust, and chattel mortgage''; that the chattel mortgage was then properly foreclosed and Brotzman bought the personal property in for $3,500, and thus terminated the interest of the purchasers in the personal property. Later it is found that the trustee caused the real property to be sold in accordance with the terms of the deed of trust and with the law; that Brotzman purchased at the sale; that this terminated the purchasers' interest in the realty. While the finding in reference to the sale of the realty does not expressly state the default upon which it is based, it necessarily refers back to the default upon which the foreclosure of the chattel mortgage was based. Moreover, the trustee's deed recites that the defaults leading to the sale of the realty were the failure to restore a destroyed building, the failure to deliver to the Brotzmans fire policies on many of the buildings on the property, the failure to pay past due taxes and the failure to pay past due interest on the note. Thus, the evidence shows that the purchasers were not only in default by failing to pay past due taxes and interest, but were not properly maintaining the machinery and mill, were not paying required insurance, had suffered attachments against the property, etc. Thus, the challenged finding is abundantly supported.

The last major contention of appellant is that, as a matter of law, the testimony of Ira Brotzman is unworthy of belief. It is argued that he made inconsistent and contradictory statements; that he juggled the books; that he added or subtracted incorrectly and made double entries so as to benefit himself, and that, in fact, there was nothing due from the purchasers at the time of foreclosure. The point is without merit.

Inconsistencies in Brotzman's testimony were for the trial court to weigh and consider. Brotzman was closely

cross-examined by counsel for appellant as to his entries in the payment book kept by him. It is true that on several minor matters he was crossed up, but these matters did not affect, substantially, the accuracy of the record book kept by him.

The contention that Brotzman did not give the purchasers full credit for the gasoline station when it was turned over to the sellers is without merit. While it is true that Brotzman testified that he thought the $12,000 credit on the gasoline station deal resulted in an overpayment of past due obligations of about $2,100, and that the evidence shows that such overpayment was in fact more than $2,100, the record of payments shows conclusively that this error as to the amount of the overpayment did not affect the account between the parties. This is so because the payment book demonstrates that the purchasers were given full credit for the entire $12,000 regardless of how much this overpaid past due obligations. No substantial inaccuracies in the payment record were shown to have occurred, and Brotzman's testimony was not impeached, as a matter of law. There is abundant evidence that the purchasers were in default in April of 1954, and that they had been and remained unable to perform their contract obligations. Thus, respondents were justified in taking possession and selling the chattels and the real property.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.