[Civ. No. 20082. First Dist., Div. One. Nov. 7, 1962.]

RICHARD E. CAMP, Plaintiff and Appellant, v. ANTHONY ORTEGA, Defendant and Respondent.

Harry C. Rogers for Plaintiff and Appellant.

Robert H. Blumenthal for Defendant and Respondent.

SULLIVAN, J.—In this action for damages for conversion plaintiff appeals from a judgment, after a nonjury trial, in his favor and against the defendant Anthony Ortega. The issues on appeal are confined to the amount of damages awarded.

Plaintiff was a motion picture cameraman, recording engineer and electronics technician. In February 1959 he formed with one Hecht a partnership known as the Hecht-Camp Productions. Hecht and the plaintiff then leased from the defendant Ortega certain premises on Jones Street in San Francisco. After a few months there was a disagreement between them, Hecht left and the plaintiff continued the business alone with hope of finding a new associate. In view of the present issues, the subsequent events need not be set forth in detail. It is sufficient to note that in the latter part of August and just when plaintiff thought that he had secured a new associate, the defendant locked the plaintiff out of the leased premises and claimed all of the property contained therein as his own. Included among such property was personal equipment of the plaintiff which is the subject of the present action. Plaintiff's demands for the return of this were met with refusal. Shortly thereafter defendant formed a partnership with Hecht in order to continue the business.

The trial court found and concluded that on or about August 24, 1959, the plaintiff owned and possessed certain specifically described tools, recordings, photographic, office and miscellaneous equipment of a reasonable value of $8,000; that such equipment was subject to the lien of a chattel mortgage in the sum of $4,600 held by a person other than the defendant; that on or about August 24, 1959, the defendant unlawfully and wrongfully took the described property and converted it to his own use; that the defendant refused to return it; that the plaintiff was indebted to the defendant in the sum of $275 for rent; and that the plaintiff was entitled to judgment in the sum of $3,125. Judgment was rendered accordingly.[1]

Plaintiff makes two contentions on appeal: (1) That the

---

[1]It is obvious that the amount of the judgment represents the reasonable value of the property less the amount of the chattel mortgage lien plus the unpaid rent.

finding that the reasonable value of the converted property was $8,000 is not supported by the evidence, the uncontradicted evidence showing such value to be in excess of $25,000; and (2) the court erred in deducting from the reasonable value of the property, the amount of the lien of the chattel mortgage thereon. We discuss these in the above order.

The converted property as listed in the findings of the court consists of 102 items. Evidence of its value, introduced by plaintiff, falls into three categories: the plaintiff's own testimony, expert opinion evidence of the witness Jack Rochlin, and valuations shown in a cinema supply catalog. The defendant introduced no evidence of value.

The plaintiff testified as to the value of each of the 102 items on the list. Such testimony on its face produced a total value for all in the sum of $28,642. He was cross-examined at length and in detail. It is apparent to us that the purpose of this cross-examination was not only to show that the plaintiff's statements as to value were exaggerated and inaccurate but to directly attack the plaintiff's credibility by showing that under the circumstances he could not have acquired property of such great value. From our reading of the record, including the character as well as the content of the plaintiff's answers, it is fair to say that plaintiff's claims of valuable property could have well taken on a new appearance when examined by the trier of fact under the spotlight of such interrogation.

We note some of the salient points. On direct examination, plaintiff testified item by item as to the value he placed thereon. At the outset of the cross-examination on this subject, it became apparent that plaintiff had acquired his property over a period of time. He was thereupon asked how much he had spent for it during the three-year period immediately preceding August 1959, the date of the alleged conversion. His answer was that he had spent $6,000 to $10,000 "with trades." However it also appeared that during this three-year period the plaintiff had operated at a loss. When asked to explain the source of the $10,000, he claimed that he obtained it from an inheritance. In the light of these financial circumstances, a subsequent inquiry as to the source of funds necessary to defray living expenses brought the answer that plaintiff had actually received some of the equipment as gifts and had survived the financial crisis which the above answers import by the expedient of loans of several thousand dollars from friends. We of course have no way of reproducing here plaintiff's appearance during these and other inquiries and the

manner in which he responded to them, all of which was before the trier of fact.

The testing of plaintiff's claims as to the valuable character of his property was then applied to the period from 1949 or 1950 to 1956. Although at first claiming that he could not state how much he had spent during these years, he later testified that "twenty to thirty thousand dollars' worth was obtained through trade and cash." Subsequent inquiries were directed to the question whether his income during such period would permit expenditures of such magnitude. Plaintiff's first replies on this point were to the effect that he couldn't remember. He was ordered to produce copies of his income tax returns and such copies of federal individual returns for nine calendar years from 1950 through 1958 were admitted in evidence. These documents were admitted in evidence over plaintiff's objection on the sole ground of their materiality. They showed that although plaintiff had but one exemption, his own, he paid no tax at all in five of the years and inconsequential amounts in the remaining four.

The cross-examination sought verification of value in other ways. Inquiries were made to verify cost. As to some items, plaintiff responded that he had no written verification since he paid for the equipment in instances in sizeable amounts with currency. No receipts were produced, plaintiff claiming that he did not know where they were, that some were in storage and that some, as he believed, were on the Jones Street premises. Nor did plaintiff produce records showing the value of the property in controversy for personal property taxation. His testimony as to the amounts of personal property taxes he paid over the years would appear to be vague and inconclusive. A so-called "floater policy" of insurance issued in May 1959 was introduced in evidence during the direct examination of plaintiff. Plaintiff's property which was scheduled for the policy appears to have a total value of $13,500, was considered by the trial judge to have a total scheduled value of $15,000. Plaintiff testified that only part of his equipment was covered by such insurance issued to Hecht-Camp Productions and that the policy had been taken out prior to the time he had brought his equipment on the premises.

The schedules of depreciation in plaintiff's tax returns, copies of which were in evidence, were also brought to the court's attention. In the return for 1958, the year before the conversion of the property, the schedule lists "Lathe & presses" acquired in 1951 at a cost of $775 and "Misc. equip-

ment'' acquired in 1952 at a cost of $500. The above amounts appear in all of the other returns except 1954 when apparently no depreciation was taken. Plaintiff claimed that this schedule on his 1952 return, which described his business as ''General precision repairs,'' did not represent all his personal property, since his business then was designing and building photographic equipment and that he was merely accumulating equipment for his contemplated motion picture business. However, his 1958 tax return showed his occupation to be ''Cameraman & instrument repairman.'' The trial court considered the value of the property as shown on the income tax returns to be $500.

The second category of plaintiff's evidence on value consisted of the opinion evidence of Jack Rochlin who had been engaged in the business of selling new and used photographic equipment and supplies for approximately 15 years. Such experience included recording equipment. Rochlin testified as to the value of 19 of the 102 items of converted property, his testimony producing on this record an aggregate value for such items of from $13,039 to $13,289. He had seen the equipment in the basement of the Jones Street premises two days before he was called as a witness. He testified that he ''found a lot of photographic equipment and miscellaneous equipment piled in a heap,'' that ''[i]t was very difficult to actually see the exact piece of equipment . . .'' and that ''it was very difficult to observe the actual condition. . . .'' In instances, the witness, when giving his opinion as to value, assumed that the item was in good condition and upon cross-examination, admitted that all of his estimates as to value were based on the assumption that all of the equipment was in good working condition. Despite the fact that he had given statements of value, the witness testified on cross-examination that he himself would not offer to buy a certain camera unless he thoroughly examined it, that assuming it was in ''perfect working condition'' he would probably offer $400 to $600 (although he had given a value of $1,000 on direct examination) and that he would not bid on the photographic equipment which he had seen ''unless I thoroughly examined each piece.''

The third category of evidence on value consisted of prices taken from a 1960 S.O.S. Cinema Supply Corp. catalog. Both plaintiff and his witness Rochlin testified that such catalogs were customarily referred to for pricing purposes and generally reflected prevailing prices in the area. The catalog,

admitted in evidence over defendant's objection, was used to price 17 of the 102 items and produced on the record an aggregate value therefor in the sum of $15,103.15.

During the cross-examination of plaintiff, the defendant introduced in evidence a certain $5,000 promissory note executed by the plaintiff and his associate Hecht in favor of the Crocker-Anglo National Bank as evidence of a loan, together with a chattel mortgage securing the same. The chattel mortgage covered plaintiff's property now in controversy, as well as other property. Defendant appears to have made use of this evidence for two purposes: First, to show that plaintiff did not have a full ownership of the converted property; and secondly, on the question of value, to show that the property did not have the high value claimed by plaintiff, since the bank refused to make the loan on the security alone but required and apparently received a guaranty thereof from Hecht's father-in-law.

In his opening brief plaintiff has tabulated the foregoing three categories of evidence on value and by formulating various combinations of the values for each item, proposes that such evidence shows a "high" value of $31,348.50 and a "low" value of $25,690.05. Plaintiff's argument may be reduced to the following: that the evidence on value is without conflict; that his own evidence giving a total value of $28,642 is confirmed by the other two categories of evidence; that he should be awarded a new trial on the issue of damages or this court should modify the judgment in his favor by increasing it to $25,690.05 (less offset) to reflect at least the alleged uncontradicted "low" value of the property. In summary, plaintiff's position is that the trial court had no right to find a value of $8,000 or any value less than $25,690.05. This position is untenable.

■ As a general rule, the unimpeached and uncontradicted testimony of a witness, not inherently improbable, cannot be arbitrarily disregarded and should be accepted as true by the trier of fact. (*Gomez* v. *Cecena* (1940) 15 Cal.2d 363, 366 [101 P.2d 477]; *Mantonya* v. *Bratlie* (1948) 33 Cal.2d 120, 127 [199 P.2d 677]; *Joseph* v. *Drew* (1950) 36 Cal.2d 575, 579 [225 P.2d 504]; *Estate of Warner* (1914) 167 Cal. 686, 690 [140 P. 583]; *Krause* v. *Apodaca* (1960) 186 Cal. App.2d 413, 417 [9 Cal.Rptr. 10]; *Wirz* v. *Wirz* (1950) 96 Cal.App.2d 171, 176 [214 P.2d 839, 15 A.L.R.2d 1129]; see generally 19 Cal.Jur.2d, Evidence, § 475, pp. 238-240 and

cases collected therein.) The above rule, however, is subject to many exceptions firmly established in the decisions.

In *Davis* v. *Judson* (1910) 159 Cal. 121, 128 [113 P. 147], they were stated as follows: "The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; . . ."

Mr. Justice Field, speaking for the Supreme Court of the United States in *Quock Ting* v. *United States* (1891) 140 U.S. 417, 420-421 [11 S.Ct. 733, 851, 35 L.Ed. 501], used the following language: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

In the leading and frequently cited case of *La Jolla Casa deManana* v. *Hopkins* (1950) 98 Cal.App.2d 339, 345-346 [219 P.2d 871], the exceptions are pointed out as follows: "[A] trial judge has an inherent right to disregard the testimony of any witness, or the effect of any prima facie showing based thereon, when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or interest or bias of the witness. All of these things may be properly considered in determining the weight to be given the testimony of a witness although there be no adverse testimony adduced. The trial judge is the arbiter of the credibility of the witnesses. A witness may be contradicted by the facts he states

as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts."

It has therefore been established by the above and a long line of decisions that the trier of fact, as the exclusive judge of the credit and weight to be given to the testimony of a witness, may reject such testimony even though uncontradicted and unimpeached when he does not act arbitrarily but does so upon sound and relevant considerations such as those enumerated above. (*Huth* v. *Katz* (1947) 30 Cal.2d 605, 608-609 [184 P.2d 521]; *Hicks* v. *Reis* (1943) 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Wind* v. *Herbert* (1960) 186 Cal.App.2d 276, 286 [8 Cal.Rptr. 817]; *Blye* v. *Affonso* (1960) 185 Cal. App.2d 241, 242-243 [8 Cal.Rptr. 155]; *Kraut* v. *Cornell* (1959) 175 Cal.App.2d 528, 531-532 [346 P.2d 438]; *Sharpe* v. *Brotzman* (1956) 145 Cal.App.2d 354, 360-361 [302 P.2d 668]; *Perske* v. *Perske* (1954) 125 Cal.App.2d 795, 801-802 [271 P.2d 528]; *Aycrigg* v. *United States* (D.C.N.D.Cal. 1954) 136 F.Supp. 244, 246-248.) As it is said in *Huth* v. *Katz, supra*: "The trial court, however, was not required to believe that their testimony was true and accurate in every particular. In passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact is entitled to consider their interest in the result of the case, their motives, the manner in which they testify, and the contradictions appearing in the evidence. [Citations.]" (30 Cal.2d pp. 608-609.) The finding or conclusion of the trial court denying credence to such testimony cannot be controlled by this court "unless it appears that there are *no matters or circumstances which at all impair its accuracy.*" (*Davis* v. *Judson, supra,* 159 Cal. at p. 128; emphasis added.)

The foregoing principles apply to testimony regarding value. In *Langley* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 655 [262 P.2d 846], the plaintiff sued for damages for breach of contract to furnish electric power to his fish hatchery as a result of which a large number of his trout died. It was held to be reversible error for the trial court to instruct the jury that if they found for plaintiff they could not award the plaintiff any less than 16 cents per fish. "The amount of damages sustained by plaintiff was placed in issue by the answer to the complaint. The instruction removed that issue

from the consideration of the jury. Although plaintiff's testimony was the only evidence concerning the value of the fish, the jury was the sole judge of his credibility and should have been left free to disbelieve him. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].) On cross-examination it was shown that plaintiff was not experienced in the business of raising fish." (41 Cal.2d at p. 663.) In *Zimmer* v. *Kilborn* (1913) 165 Cal. 523, 525 [132 P. 1026, Ann. Cas. 1914D 368], an action for legal services, the plaintiff, being dissatisfied with a judgment for $500 appealed therefrom claiming that all expert witnesses produced by him testified to the value of the services in amounts in excess of $500 and that the defendant offered no evidence to contradict such testimony. In affirming the judgment, the Supreme Court held that such circumstances "did not prevent the jurors from considering the matter in the light of their own experience nor cut them off from the right to return a verdict in favor of plaintiff for a sum less than that mentioned by any witness if, in their discretion, they believed the amount returned by their verdict a sufficient compensation for the work performed." (165 Cal. at p. 525.)[2] (See generally *Aycrigg* v. *United States, supra,* 136 F.Supp. 244, 246-249.)

Considerations justifying the application of the foregoing principles are found in the evidence bearing upon value, which has been summarized by us above. The circumstances involved in the plaintiff's own testimony would warrant the court in disbelieving it, at least in part. The court could have considered the facts upon which plaintiff sought to explain how he acquired the equipment, and reasonably inferred that, if it were in fact of the great value claimed by plaintiff, it could not have been acquired in the manner and under the circumstances which plaintiff's testimony proffered. From this, the court could have concluded that the equipment was not as valuable as it was claimed to be and that plaintiff's statements on direct examination were exaggerated, and probably in instances false. The court could have also considered that the plaintiff, who seeks money damages, had an obvious and indeed substantial interest in the result of the litigation. Finally there remains the manner in which the plaintiff testified. While the record before us does not reproduce this, it never-

---

[2]Not involved in *Zimmer*, a jury tried case, is the rule that trial and appellate courts possess the power and ability to make an appraisal and adjudication of the value of legal services. (*Kirk* v. *Culley* (1927) 202 Cal. 501, 510 [261 P. 994].)

theless reflects answers of the plaintiff which in instances appear to us indefinite, uncertain and even evasive. The trial judge had the opportunity to observe the living, speaking witness and properly weigh his answers. Thus, all of the above circumstances could have impaired the accuracy, affected the weight, and impeached the credit of the testimony which plaintiff claims here was "uncontradicted."

The other two categories of testimony were, in our view, properly evaluated according to the same test. It is clear from the statements of Rochlin himself that his *expertise* was predicated upon an unstable basis to start with, since by his own admission he had not examined the condition of the items which he appraised. It was made more insecure by the plaintiff's explanations dealing with the acquisition of the property and thus affecting its age, prior use, and current working condition. The record is susceptible of the inference that as to many items, Rochlin was therefore not testifying to the actual value of the converted property. With respect to the values taken from the catalog, it would certainly be reasonable for the court to consider them with marked reservations, since under the circumstances it could not be said that the condition of the item in the catalog corresponded with that of the item converted, especially where the condition of the latter is at best but indistinctly shown by the evidence.

It was therefore properly within the province of the trial court to give credit and weight to the above evidence in the light of the foregoing considerations and while disbelieving that the property was worth the full value claimed, to find nevertheless that it had some value. The finding of $8,000 reasonable value therefore has evidentiary support.

Plaintiff claims that the court exercised this prerogative in an arbitrary and artificial manner by, in effect, splitting the difference between the value of the equipment appearing on the insurance policy and the value appearing on the income tax return, arguing that this basis of the court's decision is disclosed by the following language in the court's memorandum opinion: "As between the value on the insurance policy ($15,000.00) and on the income tax return ($500.00) the court finds the value to be $8,000.00, . . ."[3] Plaintiff's argument must fail. The trial court's opinion cannot be thus used to impeach and annul the court's findings. (*Oldis* v.

[3]This would produce a figure of $7,250. But even this appears to be inaccurate, since the insurance value, after excluding property not plaintiff's, appears to be $13,500, thus producing a "split" figure of $6,500.

*La Societe Francaise* (1955) 130 Cal.App.2d 461, 472-476 [279 P.2d 184]; *City of Daly City* v. *Smith* (1952) 110 Cal. App.2d 524, 529 [243 P.2d 46]; *DeCou* v. *Howell* (1923) 190 Cal. 741, 751 [214 P. 444].)

We turn to plaintiff's second contention on appeal which challenges the deduction by the trial court from the reasonable value of the converted property of the lien liability of $4,600 represented by a chattel mortgage on the property. The court found that this lien and chattel mortgage was held by a person other than the defendant. The record does not show, and indeed no claim has ever been made, that the defendant ever applied, or was called upon to apply, the converted property to the satisfaction of the mortgage.

In an action for damages for conversion, it is the rule that the plaintiff, although owning but a limited or qualified interest in the property may, as against a stranger who has no ownership therein, recover the full value of the property converted. (*Treadwell* v. *Davis* (1868) 34 Cal. 601, 606 (pledgee)[4]; *Thompson* v. *Toland* (1874) 48 Cal. 99, 114 (on rehearing), 117-118 (pledgee); *California Cured Fruit Assn.* v. *Ainsworth* (1901) 134 Cal. 461, 462-463 [66 P. 586] (limited percentage interest in growing crops); *Driver* v. *Acquisto* (1956) 145 Cal.App.2d 304, 309-311 [302 P.2d 387] (conditional vendee); *Igauye* v. *Howard* (1952) 114 Cal.App.2d 122, 127 [249 P.2d 558] (lessee owning furniture not fully paid for); *Watson* v. *Stockton Morris Plan Co.* (1939) 34 Cal. App.2d 393, 400 [93 P.2d 855] (pledgee); *Booth* v. *Peoples Finance & Thrift Co.* (1932) 124 Cal.App. 131, 136-137 [12 P.2d 50] (conditional vendee); *Abramowitz* v. *Bank of America* (1955) 131 Cal.App.2d Supp. 892, 898 [281 P.2d 380] (conditional vendee); 48 Cal.Jur.2d, Trover and Conversion, § 48 at pp. 598-599; 53 Am.Jur., Trover and Conversion, §§ 121-123 at pp. 907-908.) The rationale of the above rule permitting recovery of the full value is that the owner of the limited or qualified interest is still liable over to the person owning the superior or remainder interest. (See authorities immediately above; see also *Goldberg* v. *List* (1938) 11 Cal.2d 389, 393-394 [72 P.2d 1087, 116 A.L.R. 900].) Although no cases have been cited or disclosed by our independent research involving a plaintiff who is a chattel mortgagor, we are of the opinion that the rationale of the above rule and the rule itself

---

[4]Overruled on other points by *Reed* v. *Bernal* (1871) 40 Cal. 628, 630-633.

are just as applicable to such species of limited or qualified ownership as to cases involving conditional vendees or pledgees.

At this point we consider a number of arguments advanced by the respondent against the application of the above rule of measure of damages.

First, defendant contends that support can be found for the deduction of the lien liability of $4,600 in the case of *Goldberg* v. *List, supra,* 11 Cal.2d 389. In *Goldberg* a conditional vendee under several sales contracts brought an action for conversion against certain persons who were strangers to the contracts and had no ownership in the property. At the time of the conversion the plaintiff was in default under the contracts. Subsequently, the defendants who had converted the property, upon the demand of the conditional vendors, turned the property over to the latter. Judgment was rendered for the defendants upon a finding that in view of the above circumstances the plaintiff had suffered no damage. The plaintiff on appeal maintained that in view of the provisions of sections 3336 and 3337 of the Civil Code[5] the return of the property to the conditional vendor was immaterial and thus ineffective to minimize damages. The Supreme Court rejected this contention holding that section 3337 did not preclude proof of the return of the property in mitigation of damage and that while the conditional vendee did not give an *express* consent to such application of the property, his consent was *implied* in the very form of the contract itself, stating " [i]n any event, we are of the opinion that section 3337 can only be held to apply to a situation where the property was voluntarily applied by the party guilty of conversion to the benefit of the injured party, and can have no application to a situation such as here where the application was compelled by a legal duty." (11 Cal.2d at p. 393.) Since the appeal was on the judgment roll alone, the court then assumed in support of the judgment, that the

---

[5]Section 3336 provides in relevant part: "The detriment caused by the wrongful conversion of personal property is presumed to be:

"First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . . ."

Section 3337 provides: "The presumption declared by the last section cannot be repelled, in favor of one whose possession was wrongful from the beginning, by his subsequent application of the property to the benefit of the owner, without his consent."

contracts contained no provision for the continued liability on the part of the conditional vendee after the retaking of the property by the conditional vendor and there being no liability, concluded that the reason allowing the owner of a limited interest to recover the full value of the property was not present under the particular circumstances and that the rule of full recovery should not then be applied.

Defendant herein misconceives the holding of *Goldberg*. It is essentially one of mitigation of damages. It is applicable only where the defendant-converter in response to the legally enforceable demand of a third person holding a superior ownership applies the property to the benefit of the plaintiff and thus extinguishes any liability over of the plaintiff to such third person. In the instant case there has been no application whatsoever of the converted property to the benefit of the plaintiff. The conditions for mitigating damages have not been satisfied. The rule announced in *Goldberg*, accordingly, cannot control.

Next, defendant claims that the *Goldberg* case should be made applicable since "the property converted will be applied to the benefit of the plaintiff mortgagor as a matter of law upon default in accordance with the provisions of Section 726 of the Code of Civil Procedure." The fact that the chattel mortgagee may foreclose does not mean that he will. The record fails to disclose that such foreclosure is imminent. Such circumstances will not make the *Goldberg* rule operative. It comes into play after the actual application of the converted property to the plaintiff's benefit with the resultant extinguishment of the plaintiff's liability.

Defendant argues that section 3336 which we have set forth in the preceding footnote declares, according to defendant, "that the measure of damages . . . is *presumed* to be either the full value of the property, or alternatively an amount sufficient to indemnify the party injured" and that therefore "it would reasonably seem that the true measure of damages is nevertheless the *actual* detriment or *actual* damages. . . ." (Original emphasis.) This argument then proceeds upon the gratuitous assumption that the so-called *actual* damages would be something less than the full value of the property and the rule of damages set forth by us above would be suspended as it was in *Goldberg*. The argument has no merit. None of the authorities announcing the rule of measure of damages for the owner of a limited or qualified interest hold or even suggest that the alternative provision

found in section 3336 would, if applied, require a different measure of damages from that set forth above. The exception to the general rule, which exception is found in *Goldberg*, is not based on the alternative language of section 3336 at all, but on other considerations discussed by us above.

 Finally, defendant complains that if the $4,600 lien liability is not deducted and the general rule of measure of damages is applied herein, the plaintiff might be unjustly enriched and the defendant might be subjected to the burden of paying the $4,600 twice. Defendant envisages the following situation: Defendant would have converted property worth $8,000 but subject to a $4,600 lien; plaintiff would have $8,000 presumably received in satisfaction of the judgment, including the $4,600 to defray his liability over. In the event of a default in the payment of the obligation secured, defendant would have to pay the $4,600 (the second time) or lose the property, while plaintiff would have a windfall of $4,600. On the other hand, so runs the argument, under the judgment as rendered by the trial court, plaintiff would be protected since there would be ample security to cover the unpaid balance. However defendant minimizes, if he considers at all, that in the latter situation the fact that the security might depreciate in value, become valueless, lost or stolen, might subject plaintiff to a deficiency judgment. It is not necessary to evaluate these competing risks. The plain answer to the problem posed is that the defendant is the wrongdoer and having brought about the above situation should bear the resultant risks and disadvantages.

We therefore hold that the trial court erred in deducting from the reasonable value of the converted property, the lien liability in the sum of $4,600.

The judgment is modified by adding thereto the sum of $4,600 and as thus modified is affirmed. Each party shall bear his own costs on appeal.

Bray, P. J., and Molinari, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 3, 1963. Peters, J., was of the opinion that the petition should be granted.