Filed 5/12/14  Marriage of Rey CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of TERESA and MANUEL REY. | B242418 |
| | (Los Angeles County Super. Ct. No. BD424077) |
| TERESA REY, | |
| Respondent, | |
| v. | |
| MANUEL REY, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frederick C. Shaller, Judge.  Affirmed as modified.

John Viljoen and Rudy Aguirre for Appellant.

Teresa Rey, in pro. per., and Pete A. Urquijo for Respondent.

_____

# INTRODUCTION

Manuel Rey appeals from a final judgment of dissolution of his marriage to Teresa Rey. Manuel challenges the award of permanent spousal support to Teresa.[1] He also challenges the trial court's determinations of which properties were community property and which were his separate property, contending the trial court's ruling gave Teresa a windfall. Finally, he challenges decisions regarding surcharges and reimbursement. We agree in part with Manuel's challenges to the amount of the community property share of Teresa's real estate commissions and modify the judgment accordingly. In all other respects, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

Manuel and Teresa were married on December 17, 1983 and separated on February 11, 2005. On April 5, 2005 Teresa filed a petition for dissolution of marriage. The trial court bifurcated the trial into the issue of status and the issues of spousal support and property. On June 27, 2006 the court entered a judgment of dissolution. On May 4, 2012 the court entered a final judgment on the reserved support and property issues after a trial.

The trial court awarded Teresa $1,500 in monthly permanent spousal support. In making this award the trial court considered the parties' ages (Manuel was 69 and Teresa was 61 in January 2011), the length of their marriage, their income, debts, and earning capacity, the community assets awarded, and other appropriate factors. The court ordered Manuel to pay spousal support until Teresa died or remarried, or until further court order.

---

[1] As is customary in family law proceedings where the parties share the same last name, we refer to them by their first names for ease of reference and mean no disrespect. (*In re Marriage of Greenway* (2013) 217 Cal.App.4th 628, 631, fn. 1; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1466, fn. 1.)

Prior to the marriage, Manuel owned income properties. He also owned and operated a number of businesses, including California Auto Wholesalers, Safeway Auto Body, Rey Auto Sales, Rey Used Cars, Beeline Body Shop, and a Shell gas station. Both prior to and during the marriage, the parties purchased, sold, and received income from a number of properties. The parties also had a number of bank accounts. The trial court determined whether each of these assets was community or separate property and how each property should be distributed.

Specifically, the trial court determined that the property located at 1027 Western Avenue in Los Angeles was Manuel's separate property and awarded it to him. The court used the *Moore/Marsden*[2] apportionment formula to determine that there was a pro rata community property interest of $322,039 in the property, and awarded Teresa half of that amount, subject to equalization.

The trial court determined that an income property located at 15462 Beckner Street in La Puente was community property with net equity in the amount of $156,855.82. The court awarded it to Manuel as his separate property, subject to equalization. The court declined Manuel's request for reimbursement for separate property payments he claimed he made toward the down payment on the property.

The court determined that the property located at 4812 Cloverly Avenue in Temple City was community property. The court valued the property at $344,740 and awarded it to Manuel as his separate property, subject to equalization. It ordered the community to reimburse Manuel $15,786 for mortgage and tax payments pursuant to Family Code section 2626[3] and *In re Marriage of Epstein* (1979) 24 Cal.3d 76. The

---

[2] *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372 and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 436-437 provide a formula for apportioning community and separate property interests in property.

[3] Section 2626 allows the court "to order reimbursement in cases it deems appropriate for debts paid after separation but before trial." Consistent with this section, "[a]n *Epstein* credit is the right to be reimbursed by the community for separate property funds used after separation to meet community expenses. [Citation.]" (*In re Marriage of*

3

court also found Manuel was entitled to reimbursement of $33,948 under section 2640.[4] The court denied the remainder of Manuel's requests for reimbursement of separate property used for the down payment on and improvement of the property.

The trial court awarded the property located at 1992 Bunker Avenue in El Monte to Teresa as her separate property. The Bunker Avenue property was an income property the parties purchased during their marriage, and they agreed it was community property. It had a net community equity of $320,137 after a $78,889 reimbursement to Manuel. The court denied Manuel's request for additional sums he claimed he spent on the acquisition and improvement of the property out of his separate property.

The trial court denied Manuel's request to surcharge Teresa for misappropriation of $30,000 in community funds under section 2602.[5] The court found that Teresa earned

---

*Boblitt* (2014) 223 Cal.App.4th 1004, 1010, fn. 2.) Unless otherwise stated, further statutory references are to the Family Code.

[4] Section 2640 provides: "(a) 'Contributions to the acquisition of property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property.

"(b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division.

"(c) A party shall be reimbursed for the party's separate property contributions to the acquisition of property of the other spouse's separate property estate during the marriage, unless there has been a transmutation in writing pursuant to Chapter 5 (commencing with Section 850) of Part 2 of Division 4, or a written waiver of the right to reimbursement. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

[5] Section 2602 provides: "As an additional award or offset against existing property, the court may award, from a party's share, the amount the court determines to

$15,100 in real estate commissions prior to separation that were not paid until after the parties had separated. The court found that these commissions were community property and ordered that Teresa reimburse Manuel in the amount of $7,550.

## DISCUSSION

A. *Spousal Support*

An award of permanent spousal support "'is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' [Citations.]" (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442; see *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594-595.) These circumstances "include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property" (*Blazer*, *supra*, at p. 1442); the marketable skills of each spouse; the length of the marriage; the age and health of each spouse; the public policy that the supported spouse become self-sufficient; and any other relevant factors. (§ 4320.) "'The trial court has broad discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor.' [Citation.]" (*Blazer*, *supra*, at pp. 1442-1443; accord, *In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1150.)

We "act with 'cautious judicial restraint' in reviewing spousal support orders. [Citation.]" (*In re Marriage of Left*, *supra*, 208 Cal.App.4th at p. 1150.) We review the spousal support award "under the deferential abuse of discretion standard. [Citation.]

have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate."

5

We examine the challenged order for legal and factual support. 'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.' [Citations.]" (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at p. 1443; *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1286.) To the extent an appeal raises a question of law, however, our review is de novo. (*Blazer*, *supra*, at p. 1443.)

Here, the trial court analyzed all of the factors in section 4320 and stated its reasoning and the evidence on which it relied with respect to each factor. Manuel does not challenge the trial court's analysis or its reasoning. Rather, he contends that, to the extent the trial court relied on the parties' income and expense declarations, the support award is not supported by substantial evidence because income and expense declarations are not admissible evidence.

It is true that in *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, on which Manuel relies, the California Supreme Court held that "declarations constitute hearsay and are inadmissible at trial, subject to specific statutory exceptions, unless the parties stipulate to the admission of the declarations or fail to enter a hearsay objection. [Citations.]" (*Id.* at p. 1354.) It is also true, as Manuel argues, that the parties' income and expense declarations were hearsay. Trial counsel for Manuel, however, never objected to the admissibility of the income and expense declarations on the ground they were inadmissible hearsay. (See *People v. Eubanks* (2011) 53 Cal.4th 110, 142 [failing to raise hearsay objection at trial forfeits the objection on appeal]; *Fry v. Pro-Line Boats, Inc.* (2008) 163 Cal.App.4th 970, 974 [failure to raise hearsay objection at trial waives argument on appeal]; *In re the Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 [even if a declaration contains hearsay or other inadmissible matter, "failure to object on these grounds in the trial court waives the defects"].)

Manuel argues that his trial attorney objected to the income and expense declarations by making the following statement during closing argument: "Now, with regard to the issue of spousal support, we are at trial and at trial it is the burden of the petitioner to present evidence under . . . section 4320 upon which the court can base any

6

order for permanent support. Not one word was spoken during this entire trial on [Teresa's] behalf with regard to the issue of spousal support. For [Teresa's counsel] to ask the court for the court to make a spousal support order based on the income and expense declaration of his client and my client is totally inappropriate and the court cannot do that. At best, what the court can do in this case in this matter is to reserve jurisdiction over the issue of spousal support and not make any order with regard to either [Manuel] or [Teresa]." This statement, however, was not an objection to the introduction of evidence, let alone an objection to the admissibility of the income and expense declarations on the ground that they were inadmissible hearsay. A general objection to evidence that does not raise the claim of error advanced on appeal forfeits that claim. (See *People v. Samuels* (2005) 36 Cal.4th 96, 122 [party who "failed to make a specific and timely objection on hearsay grounds . . . failed to preserve this claim for review"]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726 ["[t]o obtain reversal based on the erroneous admission of evidence, the record must show a timely objection making clear that specific ground"]; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 564-565.) Moreover, when Manuel filed written objections to the trial court's tentative statement of decision, which specifically referred to the parties' income and expense declarations, he did not argue that the declarations were inadmissible hearsay. In fact, in objecting to the trial court's statement of decision, Manuel referred to and relied on the contents of the declarations.

By failing to object Manuel forfeited his hearsay objection to the parties' income and expense declarations. We therefore reject his challenge to the award of spousal support that is based exclusively on the trial court's consideration of those declarations.


B. *Property Issues*
1. Standard of Review

"In dividing the community estate as part of a marital dissolution, the court must generally effect an equal division. (. . . § 2550.) . . . And when the court concludes that property contains both separate and community interests, the court has very broad

7

discretion to fashion an apportionment of interests that is equitable under the circumstances of the case. [Citations.] The court is not bound by a particular method of allocation. Rather, the court should divide the property "'"by whatever method or formula will 'achieve substantial justice between the parties.'"' [Citation.]' [Citation.]" (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 514, fn. omitted.) There is no single standard or criterion governing the apportionment of community and separate property, but the court must use a measure that is equitable under the circumstances of the case. (*Ibid*.) "'"Whatever the method that it may use, however, the superior court must arrive at a result that is "reasonable and fairly representative of the relative contributions of the community and separate estates."' [Citation.]" (*In re Marriage of Sonne* (2010) 48 Cal.4th 118, 124; *Gray*, *supra*, at p. 514.)

Our review of the trial court's division of property is governed by the deferential abuse of discretion standard. (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197; see *In re Marriage of Sonne*, *supra*, 48 Cal.4th at p. 129.) "Generally, 'the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.]' [Citation.] To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld 'as long as its determination is within the range of the evidence presented. [Citation.]' [Citation.] Conversely, a court abuses its discretion if its findings are wholly unsupported, since a consideration of the evidence 'is essential to a proper exercise of judicial discretion. [Citation.]' [Citation.]" (*Ackerman*, *supra*, at p. 197.) In determining whether substantial evidence supports the trial court's exercise of its discretion, we do not reweigh the evidence or make determinations as to credibility, because these are matters within the exclusive province of the trial court. (*Id*. at p. 204.)

To the extent our review of the trial court's division of property turns on the court's interpretation of decisional law, however, our standard of review is de novo. (*In re Marriage of Ruiz* (2011) 194 Cal.App.4th 348, 353-354.) "'[T]o make an application of decisional law . . . entails the resolution of a mixed question of law and fact that is predominantly one of law, inasmuch as it "requires a critical consideration, in a factual

8

context, of legal principles and their underlying values" rather than merely "experience with human affairs." [Citation.]' [Citation.]" (*Id.* at p. 354; accord, *In re Marriage of Sonne*, *supra*, 48 Cal.4th at p. 124.)

### 2. Western Avenue Property

The trial court found that the Western Avenue property, which Manuel purchased prior to the parties' marriage, was his separate property. It had a value of $1,365,000, with debt of $101,961, for a net value of $1,263,039. Although Manuel claimed that it was entirely his separate property, the trial court agreed with Teresa that the community had an interest in the property.

The court explained that Pamela Wax-Semus, a certified public accountant appointed as an expert for the court pursuant to the stipulation of the parties and Evidence Code section 730,[6] made a *Moore/Marsden* calculation,[7] "which she stated revealed the pro rata share of the Western Avenue building that belongs to the community based upon her conclusion that Manuel could not 'trace' his payments on the mortgage to a separate property source. Ms. [Wax-]Semus concluded that since Manuel did not show documentation of payments on the mortgage made from separate property sources, the

---

[6]    Evidence Code section 730 provides in pertinent part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. . . ."

[7]    The *Moore/Marsden* rule provides that "'[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. [Citations.]'" (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1552; accord, *In re Marriage of Geraci*, *supra*, 144 Cal.App.4th at p. 1287.)

9

[section] 760[8] presumption applied[,] in her accounting opinion, because Manuel could not prove that he made any payments on the mortgage from a separate property source, each payment was presumed to have been made with community property." Based on these conclusions, Wax-Semus calculated that the community interest in the property was 29.29 percent. Using the net equity figure of $1,252,091, she calculated that the community interest was $322,039.

The court rejected Manuel's challenge to Wax-Semus' conclusion and Manuel's claim "that the mortgage is and always was paid for by the rents charged on the property or from a separate property source." The court reached this conclusion "because Manuel could not provide copies of checks or account statements evidencing rents being paid into an account or mortgage payments being paid from an account. Unsupported by documentation which should be readily available, Manuel's assertion that he had a pattern and practice of always collecting the rents from Lee Fashion, the tenant, and paying the mortgage to William Wardell at the bank before making any other payments falls short of the required tracing in light of the [section] 760 presumption. ([*In re*] *Marriage of Hig[i]nbotham* (1988) 203 Cal.App.3d 322, 329; [accord,] *Estate of Murphey* [*sic*] (1976) 15 Cal.3d 907, 918.)"

The court also rejected Manuel's attempt to override the presumption of section 760 "by use of the exhaustion method of tracing for the period of [the] date of marriage to December 16, 1989 only." The court found that the exhaustion method "relies upon circumstantial evidence to prove separate character of acquisition costs by invoking the family expense presumption whereby community expenses are paid from a bank account in which both community and separate funds have been deposited; it is presumed that they have been paid from the community funds therein. . . . If at the time of such payment, no community funds are on deposit and, for this reason, the payment is

---

**8** Section 760 provides: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

10

made from the separate funds therein, the latter will be reimbursed therefore from subsequent deposits of community funds." (Underscoring omitted.)

The court found that the problem with this approach was that "[n]either party presented expert evidence of tracing using the exhaustion method and family expense presumption. In fact such a tracing is not feasible since records of community bills and payments are no longer in existence. However, Manuel seeks to have the court do the investigation and reach the opinions that Manuel declares are self evident from the evidence—his contention that there was insufficient community income to pay community, let alone separate property bills. The court has thoroughly reviewed evidence admitted in the attempt to exercise a process of elimination to attempt to determine whether any of the mortgage payments made by Manuel on the Western property were from a separate property source: (1) the tracing analysis performed by Wax-Semus; (2) [Teresa's] list of monthly community expenses; and (3) the parties' joint tax returns. The exhaustive review by the court does not allow the court to reach a conclusion that any of the payments of the mortgage on the Western Property from the commingled account can be characterized as separate property[, b]ecause there is no available evidence to document that at the time of each mortgage payment no or insufficient community funds are on deposit. Deposits [of] both community and separate character ebbed and flowed into and out of the account—reliance upon annual totals in the tax returns or any other available evidence simply invites speculation [on] the key issue of whether or not at the time of such payment sufficient community funds were on deposit." (Underscoring omitted.) The court concluded that Wax-Semus' "findings of inadequate tracing to prove any separate property contribution to the Western mortgage [are] appropriate."

Manuel argues that "[t]he law disfavors traps for the unwary" and "[f]ew spouses anticipate the dissolution of their marriage,"[9] and that requiring strict record keeping of

9   For the former proposition, Manuel cites *Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382 ["'Government Code section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for

separate property expenditures creates a disfavored trap for the unwary. California law, however, is to the contrary. It has long been established that "[p]roperty acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption. [Citations.] The presumption applies when a husband purchases property during the marriage with funds from an undisclosed or disputed source, such as an account or fund in which he has commingled his separate funds with community funds. [Citation.] He may trace the source of the property to his separate funds and overcome the presumption with evidence that community expenses exceeded community income at the time of acquisition. If he proves that at that time all community income was exhausted by family expenses, he establishes that the property was purchased with separate funds. [Citations.] Only when, through no fault of the husband, it is not possible to ascertain the balance of income and expenditures at the time property was acquired, can recapitulation of the total community expenses and income throughout the marriage be used to establish the character of the property." (*See v. See* (1966) 64 Cal.2d 778, 783; accord, *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610-611; see *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 25 ["[a] burden of recordkeeping logically arises out of the very act of commingling funds during marriage so the general community property presumption is not thwarted"].) These rules apply not only to the original purchase of property but also to payments made on the promissory note for a property owned as separate property. (*In re Marriage of Geraci*, *supra*, 144 Cal.App.4th at p. 1287.)[10]

the unwary'"] and *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 190 [requirement that insurers provide actual notice of contractual limitations provisions "'to remedy the trap for the unwary'"], and for the latter he cites *In re Marriage of Allen* (2002) 96 Cal.App.4th 497, 501 [which says exactly that].

[10] The court in *In re Marriage of Mix*, *supra*, 14 Cal.3d 604 amplified the rules regarding tracing and record keeping. The court stated: "Generally speaking such post-marital property can be established to be separate property by two independent methods of tracing. The first method involves direct tracing. As the court explained in *Hicks* [*v. Hicks* (1962) 211 Cal.App.2d 144, 157]: '[Separate] funds do not lose their character as

12

The court in *See v. See*, *supra*, 64 Cal2d 778 cautioned that "[a] husband who commingles the property of the community with his separate property, but fails to keep adequate records cannot invoke the burden of record keeping as a justification for a recapitulation of income and expenses at the termination of the marriage that disregards any acquisitions that may have been made during the marriage with community funds. If funds used for acquisitions during marriage cannot otherwise be traced to their source and the husband who has commingled property is unable to establish that there was a deficit in the community accounts when the assets were purchased, the presumption controls that property acquired by purchase during marriage is community property. The husband may protect his separate property by not commingling community and separate assets and income. Once he commingles, he assumes the burden of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property." (*Id.* at p. 784.)

This warning, issued long before the parties in this case married, is particularly applicable here. If Manuel wanted to make sure he kept the Western Avenue property entirely his separate property, he should either have kept the income and expenses for that property separate or have kept adequate records. He failed to do either. He did not fall into a "trap for the unwary"; he failed to comply with the requirements of well-

---

such when commingled with community funds in a bank account so long as the amount thereof can be ascertained. Whether separate funds so deposited continue to be on deposit when a withdrawal is made from such a bank account for the purpose of purchasing specific property, and whether the intention of the drawer is to withdraw such funds therefrom, are questions of fact for determination by the trial court.' [Citations.] The second method involves a consideration of family expenses. It is based upon the presumption that family expenses are paid from community funds. [Citations.] If at the time of the acquisition of the property in dispute, it can be shown that all community income in the commingled account has been exhausted by family expenses, then all funds remaining in the account at the time the property was purchased were necessarily separate funds. [Citation.]" (*Mix*, *supra*, at p. 612; accord, *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1281-1282.) The trial court did not use either of these methods.

13

established California law.[11]  Moreover, the question whether a party has overcome the community property presumption under section 760 is one of fact for the trial court.  (*In re Marriage of Mix*, *supra*, 14 Cal.3d at p. 612.)  The absence of any evidence tracing the mortgage payments on the Western Avenue property to Manuel's separate property supports the trial court's conclusion that Manuel failed to meet his burden of overcoming the presumption.  The trial court did not abuse its discretion in finding a community interest in the Western Avenue property.

### 3.    Beckner Street Property

The trial court found the Beckner Street property was community property, valued at $220,000.  The only encumbrance on the property was "the result of a 1993 refinance and is identified only as the Wells Fargo loan," with a balance due at the time of trial in the amount of $63,144.18.  Manuel claimed a right of reimbursement under section 2640 of $15,000, which he claimed he paid toward the down payment from his separate property.  As supporting evidence, he produced copies of two cashier's checks from Bank of America and one from First Interstate Bank.

The court observed that "[t]here are no bank statements in evidence or any evidence to indicate from which account these cashier's checks are drawn or any documentary proof of the source of these payments.  The oral testimony of Manuel as to the source of these funds is the only proof of the separate source.  The tax return [and] any financial information that the court has reviewed does not prove that community

---

[11]    As he did in the trial court, Manuel in his appellate brief presents us with pages and pages of figures and calculations, and then asks us to conclude that the payments on the promissory note secured by the deed of trust for the Western Avenue property must have come from his separate property because, on an annual basis, the community's expenses exceeded its income.  Manuel cannot avoid his burden of proving that the mortgage payments were made with his separate property in this manner.  (*See v. See*, *supra*, 64 Cal.2d at p. 784; *In re Marriage of Higinbotham*, *supra*, 203 Cal.App.3d at pp. 329-330; see *In re Marriage of Marsden*, *supra*, 130 Cal.App.4th at p. 442.)

14

property was unavailable to pay the down payment as there is a record of interest income that the court infers is proof of community savings."

The court did not find Manuel's testimony credible because "[t]here is no explanation as to why cashier's checks from two separate banks were required. There was no testimony as to whether either party had a bank account at either of the issuing banks. Manuel testified that the money came from cash that his father gave him that was kept in a 'gas station safe' but the existence of the cash gift was never shown and Teresa testified that she was never aware of such. Manuel never declared the cash on his tax returns as is required for receipt of gifts as large as was claimed and the court has not been provided with a single document or testimony of a single witness who can corroborate this claim." The court added that even "[a]ssuming that the exhaustion method of tracing is available to Manuel and aided by the family expense presumption, the evidence is still not adequate to prove that the downpayments were made with separate funds for the same reasons as stated relating to the Western property." The court therefore denied Manuel's claim for reimbursement.

On appeal, Manuel makes the same exhaustion argument he made regarding the Western Avenue property, which we reject for the same reasons we did for the Western Avenue property. The trial court discredited Manuel's testimony about the gift from his father, and we defer to the trial court on such credibility findings. (See *In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051-1052 ["it is well established that the trial court weighs the evidence and determines issues of credibility and these determinations and assessments are binding and conclusive on the appellate court"].)

### 4. Cloverly Avenue Property

The trial court found that the Cloverly Avenue property was community property. The court found that the property "was purchased for the total sum of $115,000 plus closing costs of $6,200 which was paid with a combination of a mortgage with United Savings Bank in the sum of $88,550 and cash downpayment of $32,650." The court observed that Manuel sought reimbursement under section 2640 for "(1) a downpayment

15

made in the amount of $32,650 which was paid in three cashier's checks and some from an unknown source; and, for (2) improvements and other disbursements made on the property in the sum of $168,334. The court's expert, Wax-Semus, concluded that only $33,948 of these claimed reimbursements could be traced to Manuel's separate property. The court [found] that Manuel has not succeeded in rebutting the community property presumption or proving Wax-Semus's opinion should not be adopted by the court." As with the Beckner Street property, the court found there was no evidence of where the funds for the cashier's checks came from, and the trial court disbelieved Manuel's testimony regarding the money in the gas station safe.

Manuel also sought reimbursement of $11,636 paid to Cenlas Mortgage. The court stated that "[t]he proof that Manuel offers to document that payments were made to Cenlas from separate property is an accounting tape summarizing a number of checks to Cenlas Federal Savings Bank. These checks are drawn on the account from Great Western Bank ending in 4518, which is a commingled account that Wax-Semus traced only for the period of 12/89 through 6/98. The checks are on an account first called 'Safeway Auto Body' and then 'Safeway Auto Rey Used Cars' and are for the period between 8/88 through 10/89. Since these checks were written before the period of tracing by Wax-Semus it is not reasonably possible to directly determine the source of funds in the account used to pay the mortgage. The tax returns for the years 1988 and 1989 reflect that there was both community and separate income during this period, and in the court's judgment there is inadequate proof that mortgage payments were made with separate property using the exhaustion method of tracing. Moreover, there are no statements from the mortgage company to indicate how much the mortgage principal was paid down during this period from any source such that an amount exclusive of interest could be determined. For these reasons, reimbursement for the Cenlas payments is denied."

Manuel also sought reimbursement of $40,800 paid to Robert Rey between June and December 1989 from the same Great Western Bank account. Because these payments occurred before the period for which there were records available to allow Wax-Semus to trace the source of funds in the account, it was not possible to determine

16

the source of the funds. The court found "that the account contained funds of mixed character and was therefore a commingled account. That task of tracing these many transactions through the various commingled accounts . . . is beyond the expertise of the court—thus, the court must rely on the Wax-Semus opinion regarding the proportion of the checks that were paid by separate funds. The court agrees with the opinion of Wax-Semus that these payments cannot be attributed to Manuel's separate property also because these payments were made to Robert by Rey Used Cars and taken as deductions from income by that business. As stated by Pamela Wax-Semus, the accounting for payments to Robert relative to the Cloverly property 'tied out exactly to the payments that were made to Robert [from Rey Used Cars] and, therefore, if he's deducting it as an expense for Rey Used Cars, this I can't see how that could possibly be for the improvement of Cloverly or Bunker.'" The court again denied Manuel's request for reimbursement.

The court made the same ruling on Manuel's request for reimbursement of $49,740 in payments to "'other laborers,'" where there was "no evidence provided as to the identity of these various laborers (except common names) or that they actually performed work on the Cloverly home as opposed to work for Rey Used Cars, Safeway Auto Body, or some other service." The court similarly denied claims for payments for materials in the amount of $53,284.25 by check, $6,025 in cash, and $36,850 by credit card. The court relied on Wax-Semus' testimony that the funds for these payments could not be traced to a particular source.

The court concluded that there were "insufficient records or other evidence (including the tax returns that do not prove the source of these funds using the exhaustion method) to prove to the preponderance standard that any separate property was used to purchase or fund any of the improvements claimed by Manuel." The court gave great weight to Wax-Semus' opinion that the records were inadequate to trace the source of the funds spent on the Cloverly Avenue property.

On appeal, Manuel provides us with several pages of numbers and calculations and then asks us to conclude that community expenses exceeded community income, and

17

that therefore the community could not have paid for the Cloverly down payment or construction. He argues that the application of the strict record keeping requirement led to a judgment that bore no relationship to the parties' actual contributions to the Cloverly property. As we stated with respect to the Western Avenue and Beckner Street properties, Manuel may not avoid his burden of proving that he made payments toward the property with his separate property in this manner.

Manuel also challenges the trial court's findings that he presented "no evidence" that Robert Rey and the other laborers "actually performed work on the Cloverly home as opposed to work for Rey Used Cars, Safeway Auto Body, or some other service" which paid them and claimed their pay as a business expense. In support of his assertion that these findings are not supported by substantial evidence, Manuel points to (1) an exhibit he submitted containing 17 pages of photocopied checks, on an account belonging to Safeway Auto and Rey Used Cars, dated 1989 through 1991; (2) evidence that Safeway Auto Body closed in 1986; and (3) Schedule C, Profit or Loss From Business, from his 1989 and 1990 tax returns, showing only $940 in income and no wages paid. Manuel testified that he used his "own personal funds" for the construction "[b]ecause there was no funds. I'm the only one who was paying for everything." He also stated that these funds came from rentals on the Western Avenue property and "the money that my father gave me."

The evidence cited by Manuel, however, is insufficient to meet his burden of rebutting the community property presumption by demonstrating a separate property source of the funds that he claims he spent on the Cloverly Avenue property. In addition, the checks did not indicate what the payments were for, and the only evidence that the checks were for laborers working on the Cloverly Avenue property was Manuel's testimony, which the trial court discredited. The trial court was within its discretion to disbelieve Manuel's testimony and his Schedule C, and we will not disturb its findings as to credibility. (See *In re Marriage of Ackerman*, *supra*, 146 Cal.App.4th at p. 204.) The trial court's denial of Manuel's request for reimbursement for separate property

18

expenditures for the work done on the Cloverly Avenue property is supported by substantial evidence.

### 5.    Bunker Avenue Property

The trial court found that the parties purchased the Bunker Avenue property during their marriage and that it was community property. The property had a value of $425,000 and debt of $25,973.79, so the community equity in the property was $399,026.21. Manuel requested reimbursement for a number of expenditures on the property that he claimed he made with his separate property.

The trial court granted Manuel reimbursement of $78,889, the amount Wax-Semus was able to trace to his separate property. The trial court denied Manuel's request for reimbursement of the amounts paid to Robert Rey and other laborers for work done on the Bunker Avenue property. With respect to the amounts paid to Robert Rey, the court noted that "[t]hese expenses were listed as an expense on the Schedule C of the joint tax returns that the parties[] filed according to . . . Wax-Semus which contradicts the claim that these services were used on the Bunker property. An award of this sum to Manuel by way of a reimbursement would result in unjust enrichment to Manuel." With respect to the other laborers, the court explained that "[a]ll of these expenses were paid with checks from Rey Used Cars and not Manuel individually. There is inadequate evidence to identify these workers or to show that these laborers actually worked on the Bunker house as opposed to provided labor at Rey Used Cars."

As he did with the Cloverly Avenue property, Manuel relies on his Schedule C forms filed in 1999, 2000, and 2001, which showed that Rey Used Cars had minimal income and paid no wages. He argues that "[t]he trial court's reasons for its decision are not determinative. Contrary evidence was undisputed. Manuel presented uncontradicted testimony and documentary evidence that he paid $46,636 to other laborers on the Bunker project," and "Teresa herself recalled that during the construction, Manuel was on the property and oversaw the subcontractors." Manuel argues that "the statement of decision is inadequate as a matter of law, requiring reversal of the judgment."

19

Manuel relies on *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, where the court held that a statement of decision was inadequate as a matter of law because "the court failed to make factual findings necessary to a resolution of disputed material issues" and "did not consider certain undisputed evidence." (*Id*. at p. 453.) Here, however, the trial court did make the factual findings necessary to the resolution of the issue of reimbursement. The court also considered the undisputed evidence but rejected it either as not credible or as insufficient to trace the payments for labor costs to a separate property source.

Manuel "confuses uncontradicted evidence with credible evidence. The trier of fact may reject even uncontradicted evidence as not credible. [Citation.]" (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 460; see *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1254 [as long as it does not act arbitrarily, court may reject uncontradicted testimony of a witness]; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 979 ["the judge may reject any evidence as unworthy of credence, even uncontradicted testimony"].) In addition, the trial court need not specify in its statement of decision that it is rejecting certain evidence and the reason why it is doing so. (*Estates of Collins & Flowers*, *supra*, at p. 1254; see *Vallera v. Vallera* (1946) 73 Cal.App.2d 466, 471-472 [trial court need not "make specific findings of fact as to all the allegations" in the complaint, but can make findings "with respect to the basic issue"].) The court "is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case. [Citations.]" (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118; accord, *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.) The trial court's 32-page, single-spaced statement of decision here was adequate, and the court did not abuse its discretion in denying reimbursement of labor costs for improvement of the Bunker Avenue property.

20

C.   *Other Issues*

1.   Misappropriation of $30,000

A December 15, 1989 settlement statement for a loan on the Beckner Street property reflected a $30,000 payoff to Jesusita Marquez, Teresa's aunt.  Manuel sought a surcharge against Teresa for misappropriating these funds.  The trial court found "[in]sufficient evidence to meet the required standard concerning a surcharge for misappropriation of funds.  In deciding whether certain assets have been misappropriated [under (section) 2602], the court must find that the taking of community assets was more than merely negligence and that the taking amounts to a 'calculated thievery by a spouse.' (*In re Marriage of Partridge* (1990) 226 Cal.App.3d 120, 126.)  The evidence is in direct conflict on this issue.  Teresa provided compelling evidence that the money was delivered to Manuel and Manuel denied receiving any.  As the party seeking the reimbursement has the burden of proof, . . . Manuel's request for reimbursement or surcharge is denied."

Manuel recognizes here that "a trial court's credibility findings cannot be reversed on appeal unless that testimony is incredible on its face or inherently improbable." (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201; see *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268 [we can only reject the trial court's findings as to witness credibility "when the evidence is inherently improbable and impossible of belief"]; *In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039, 1042 ["[o]nly where the evidence to rebut the presumption is so weak and improbable that the finding is without substantial support may the appellate court set aside the decision of the trier of fact"].)  He argues that Teresa's testimony with respect to the $30,000 "describes events which are highly improbable and physically impossible," and the only remaining evidence on the issue was his testimony that he was unaware of the $30,000 payment.

Teresa testified on cross-examination that in order to get cash out as part of a refinancing of an existing loan, she and Manuel agreed that her aunt would receive $30,000 to do them a favor—to put the check in her name and then cash it and give it to

21

Manuel.  The check was issued to her aunt.  Teresa went with her aunt to the bank, her aunt cashed the check, then they went to "one of our houses" and gave the money to Manuel.  Teresa testified that her aunt came into the office while Manuel was sitting at his desk and gave him $30,000, which he counted, and that they were going to use the money to finish construction on the property.

Counsel for Manuel impeached Teresa's testimony.  Teresa acknowledged stating in her deposition that they gave the money to Manuel at the Cloverly Avenue house and she recalled counsel for Manuel telling her that the Cloverly Avenue house had not even been constructed at that time.  Counsel for Manuel also questioned Teresa about her deposition testimony that she was living in the Cloverly Avenue house at the time.  She testified that her recollection at trial was different than it had been at her deposition.  She also acknowledged that she had no proof other than her testimony that her aunt gave the $30,000 to Manuel.  Teresa testified on redirect examination that in 1989 or early 1990 the Cloverly Avenue house was "already constructed" and "pretty much complete," although it still needed some work, and that Manuel was using one of the bedrooms as his office.  Manuel also submitted a copy of the building permit application and an inspection record for the Cloverly Avenue property dated December 7, 1989, although the parties did not obtain final approval until September 1990.  Manuel testified that he poured the foundation of the house in December 1989, and began framing and electrical work in March 1990.

"'Contradictions and inconsistencies in the testimony of a witness alone will not constitute inherent improbability' [citation] . . . ." (*People v. Holman* (1945) 72 Cal.App.2d 75, 90; see, e.g., *Wuest v. Wuest* (1945) 72 Cal.App.2d 101, 108 [trial court could accept wife's testimony and reject contrary evidence].)  Nor do they necessarily render the testimony so inherently improbable that the trier of fact must reject it. (*People v. Golden* (1961) 55 Cal.2d 358, 365; see *People v. Maciel* (2013) 57 Cal.4th 482, 519 ["""[t]o warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions""""]; *In re Marriage*

22

*of Kahan* (1985) 174 Cal.App.3d 63, 66 [contradicted evidence may constitute substantial evidence if not "'unbelievable per se'"].) The trier of fact is also free to accept a portion of a witness' testimony and reject other portions of the testimony, whether contradicted or uncontradicted. (*Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 479; *Gonzales v. Gonzales* (1968) 267 Cal.App.2d 428, 432; see *Perske v. Perske* (1954) 125 Cal.App.2d 795, 801 [where trial court "has necessarily found that the so-called uncontradicted evidence was false, an appellate court will not interfere if there is any basis at all to support the trial court"].)

The trial court had the power to reconcile the inconsistencies and contradictions in the evidence and believe Teresa's testimony that she and her aunt cashed the $30,000 check and gave the money to Manuel. (See *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1229 ["'[i]nconsistencies in testimony and a failure to remember aspects of the subject of the testimony, however, do not disqualify a witness'"; they "'present questions of credibility for resolution by the trier of fact'"]; *Wareham v. Wareham* (1961) 195 Cal.App.2d 64, 68 ["it is for the trier of fact to resolve conflicts, and this rule 'applies as well to cases of inconsistencies and contradictions within the testimony of a single witness'"].) Manuel's evidence that the Cloverly Avenue house was not constructed at the time Teresa's aunt received the $30,000 does not render Teresa's testimony that she and her aunt gave Manuel the money so "incredible on its face or inherently improbable" (*Consolidated Irrigation Dist. v. City of Selma*, *supra*, 204 Cal.App.4th at p. 201) that we must reject her testimony in its entirety. (See, e.g., *Felts v. Betts* (1957) 153 Cal.App.2d 812, 817; *Wuest v. Wuest*, *supra*, 72 Cal.App.2d at p. 108.)

### 2.     Real Estate Commissions

Manuel submitted a printout of checks Teresa received as real estate commissions between January 12, 2005 and December 15, 2005. The trial court noted Teresa's testimony "that it usually takes 30 to 90 days for a sale of a property, but that there was no way to tell from the date of receipt of funds when the right to the commission accrued. However, she did testify that the minimum time for the payment of a commission after

23

accrual was 21 days." Based on this testimony, the court found "that any funds that were received after separation, but were paid within 21 days of the 2-11-2005 separation date (that is, paid on or before 03/01/2005) are community property."

The court found by a preponderance of the evidence based on the printout of commission checks "that $15,100 in commissions were more likely than not earned before separation. While other commissions are within the time window specified by Teresa as the minimum time for payment of commissions, the court [found] that evidence unreliable to reach the preponderance standard. There was other evidence that was available to Manuel such as copies of the operative documents upon which the commissions were based that were not offered in evidence. From the failure to provide stronger and more reliable evidence, the court concludes that there is none. Thus, Teresa shall reimburse the community the sum of 50% of those sums (reimbursement due is $7,550) since the evidence is clear she did not share any of this community income with Manuel."

The court's determination whether compensation should be characterized as community or separate property is based on when the compensation is earned, not when it is received. (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 529; *In re Marriage of Doherty* (2002) 103 Cal.App.4th 895, 899.) "The 'factual findings that underpin the characterization determination are reviewed for substantial evidence' [citation], but '[i]nasmuch as the basic "inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values," the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law. [Citation.] As such, it is examined de novo' [citation]." (*In re Marriage of Finby* (2013) 222 Cal.App.4th 977, 984; accord, *In re Marriage of Sivyer-Foley & Foley*, *supra*, at p. 526.) "In any event, in apportioning such assets between community and separate property, the trial court has the discretion to use any method which is reasonable and which fairly apportions the value of the asset. [Citation.] We review the apportionment solely for abuse of discretion [citation] . . . ." (*In re Marriage*

*of Ruiz, supra*, 194 Cal.App.4th at p. 358; accord, *In re Marriage of Green* (2013) 56 Cal.4th 1130, 1142.)

As Manuel points out, the trial court's calculation of 21 days after the date of separation was incorrect. Because February 2005 had 28 days, 21 days after February 11 was March 4, not March 1. On March 2 and 4, Teresa received an additional $16,476. At a minimum, using the trial court's ruling, the community is entitled to an additional $8,238 reimbursement, for a total of $15,788.

Manuel also argues that the trial court should have awarded him half of the real estate commissions Teresa earned within the first 60 days after separation rather than 21 days, "[a]ssuming an average escrow length of 60 days," based on Teresa's testimony that it usually took 30 to 90 days to close escrow. In response to the trial court's statement that he failed to provide the court with additional records, Manuel states, "Apparently, such records were unavailable." He points to Teresa's testimony on cross-examination regarding the amount of time it took to close a transaction, when she stated, "And you're asking me to recall a file in 2005 when I can't even find the file because my broker closed the office. I can't recall. I would have to look at the file." Manuel asserts that he "could not be expected to provide documentation that Teresa herself could not find."

Manuel does not argue or cite to any evidence in the record, however, that he made any attempt to obtain records regarding Teresa's real estate commissions, or that Teresa refused or was unable to provide any such records. Manuel's assertion that "[a]pparently, such records were unavailable" does not establish that the records were in fact unavailable and Teresa could not have located them if required to do so. Spouses have fiduciary obligations to disclose financial records, including records of earnings after separation. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1475-1477; see § 2102, subd. (a).) The court may impose sanctions for the failure to disclose, including awarding of 50 percent of the undisclosed asset. (*In re Marriage of Feldman*, *supra*, at pp. 1477-1478 & fn. 6; see § 1101.) Had Manuel sought disclosure of the financial records that may have shown whether Teresa earned her real estate commissions

before or after separation, there would be a basis for determining whether the records were unavailable, whether Teresa was at fault for failing to obtain, maintain, or disclose the records, and whether the trial court should have sanctioned Teresa for such a failure by characterizing more of the commissions as community property. But there is no such record here.

The trial court chose not to speculate but to designate as community property those real estate commissions the court was reasonably certain Teresa earned prior to separation. On this record, we cannot say that the trial court abused its discretion in its method of apportionment. (See *In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514, 1524-1526 [no abuse of discretion in refusing to allocate a portion of a personal injury recovery to lost wages, on which a support order could be based, where there was no evidence on which the trial court could make that allocation].)

## DISPOSITION

The judgment is modified to provide that $31,576 in commissions earned during the parties' marriage and paid after separation are community property, and to order Teresa to reimburse Manuel 50 percent of that amount, for a total of $15,788. In all other respects, the judgment is affirmed. The parties are to bear their costs on appeal.

SEGAL, J.*

We concur:

WOODS, Acting P. J.                    ZELON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26